UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| THE CITY OF ALEXANDRIA, LOUISIANA and THE CITY OF PINEVILLE, LOUISIANA, | * * * * | CIVIL ACTION NO.: _____ |
| Plaintiffs | * | |
| VERSUS | * * | JUDGE _____ |
| THE FEDERAL EMERGENCY MANAGEMENT AGENCY, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY, W. CRAIG FUGATE in his Official Capacity as Administrator of The Federal Emergency Management Agency, THE UNITED STATES ARMY CORPS OF ENGINEERS, and LIEUTENANT GENERAL ROBERT L. VAN ANTWERP in his Official Capacity as Chief of Engineers and Commanding General of the United States Army Corps of Engineers, | * * * * * * * * * * * * * * | MAGISTRATE _____ |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, the City of Alexandria, Louisiana, and the City of Pineville, Louisiana,

file their original Complaint against Defendants.  In support of their claims, Plaintiffs

respectfully show the Court as follows:

## I.  NATURE OF THE ACTION

1.      This case provides an unprecedented example of the Federal Government over-stepping the line drawn by the Tenth Amendment to protect State sovereignty by using the authority of one federal agency to administer a subsidized *flood insurance* program as a vehicle to obtain funding from State participants to satisfy obligations of another federal agency administering a *flood control and navigation* program.  In short, the Federal Emergency Management Agency ("FEMA") de-accredited the Red River Levee System in Central Louisiana from the National Flood Insurance Program ("NFIP," authorized by the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*; 44 C.F.R. § 59.1, *et seq.*) because the United States Army Corps of Engineers ("USACE") found the levees do not meet "certification" standards.  The alleged defects in the system, however, are the responsibility of the Federal Government, through the USACE, under an entirely different legislative scheme grounded in the Flood Control Acts of 1928 and 1936 and implemented through the "Flood Control Regulations" at 33 C.F.R. 208.10, *et seq.*  (Title 33 governs "Navigation and Navigable Waters").  Ignoring that it shares shoes with the USACE for purposes of the Tenth Amendment, FEMA is demanding that the non-federal sponsors for the levee system provide proof of "certification"  as required by the NFIP, or endure the penalty of a revised flood plain map that disregards the de-accredited levees. This carefully tailored squeeze seeks to

accomplish what neither FEMA nor the USACE have direct, independent authority to

achieve – the use of State funds to administer a Federal program.  "Whatever the outer

limits of [State] sovereignty may be, one thing is clear: The Federal Government may

not compel the States to enact or administer a federal regulatory program." New York

v. United States, 505 U.S. 144, 188 (1992) (Striking on Tenth Amendment grounds the

portion of Low-level Radioactive Waste Policy Act forcing states to follow disposal

requirements or take title of regulated waste).

2.      The following observation by the Supreme Court provides the proper

context for these claims:

> By (unlawfully) forcing state governments to absorb the financial burden
> of implementing a federal regulatory program, Members of Congress can
> take credit for "solving" problems without having to ask their constituents
> to pay for the solutions with higher federal taxes.  And even when the
> States are not forced to absorb the costs of implementing a federal
> program, they are still put in the position of taking the blame for its
> burdensomeness and for its defects.

Printz v. United States, 521 U.S. 898, 930 (1997) (Striking on Tenth Amendment grounds

the portion of the Brady Act requiring State officials to perform background checks on

handgun purchasers).

3.      The constitutional departure here is especially egregious because it occurs

thirty years into a Federal program, long after the State and local communities

"voluntarily" complied with the weighty requirements of the NFIP, and without any

3

expression in the Act to support the imposition of this new condition, as required by the

Spending Clause:

> Congress has broad power to set the terms on which it disburses federal
> money to the States (internal cite omitted), but when Congress attaches
> conditions to a State's acceptance of federal funds (i.e., participation in a
> federal program) the conditions must be set out "unambiguously" . . ..

Arlington Central School District Board of Education v. Murphy, 548 U.S. 291, 296

(2006) (finding that expert fees are not "costs" under Individuals with Disabilities Act

because the Act failed to provide clear notice of obligations to states when electing to

participate in the program).  *See e.g.*,  Harris v. McRae, 448 U.S. 297, 309 (1980) ("Title

XIX of The Social Security Act was designed as a cooperative program of shared

financial responsibility, not as a device for the Federal Government to compel a State to

provide services that Congress itself is unwilling to fund . . . This is not to say that

Congress may not now depart from the original design of Title XIX . . . It is only to say

that, absent an indication of contrary legislative intent by a subsequent Congress, Title

XIX does not obligate a participating State to pay for those medical services for which

federal reimbursement is unavailable.").

    4.    Plaintiffs seek the following relief: (1) a temporary restraining order

pending a hearing on a request for a preliminary injunction; (2) declaration of rights and

obligations under the NFIA and the Flood Control Acts of 1928 and 1936; (3) an order

declaring FEMA's application of NFIA unconstitutional under the Spending Clause and

the Tenth Amendment; and (4) preliminary and permanent injunctions enjoining FEMA

from de-accrediting the Red River Levee System from the NFIP based on levee

conditions for which the Federal Government is responsible.

## II.  JURISDICTION

5.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action arises under the United States Constitution, and sovereign immunity

is waived for the purpose of reviewing a final agency action under 5 U.S.C. § 701, *et seq*.

Further, this Court may issue an injunction and further relief pursuant to 28 U.S.C. §§

2201- 02.

## III.  VENUE

6.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e), in that a

substantial part of FEMA's actions and omissions giving rise to the controversy

occurred in this District, the property and communities affected by FEMA's actions are

located within this District, and the Defendants are agencies of the United States or

officers thereof acting in their official capacity.

## IV.  PARTIES

7.      Plaintiff City of Alexandria ("Alexandria") is a political subdivision of the State of Louisiana and a "community" as defined in the NFIP, 42 U.S.C. § 4003(a)(1) and 44 C.F.R. § 59.1, and has jurisdiction over a portion of the area protected by the Red River Levee System.

8.      Plaintiff City of Pineville ("Pineville") is a political subdivision of the State of Louisiana and a "community" as defined in the NFIP, 42 U.S.C. § 4003(a)(1) and 44 C.F.R. § 59.1, and has jurisdiction over a portion of the area protected by the Red River Levee System.

9.      Defendant the Department of Homeland Security is a department within the Executive Branch of the United States.  Defendant the Federal Emergency Management Agency is an agency within the Department of Homeland Security, and Defendant W. Craig Fugate is its Director/Administrator.

10.      FEMA administers the NFIP.  In so doing, FEMA prepares and issues Flood Insurance Rate Maps ("FIRMs") and recognizes or accredits levee systems that meet standards promulgated by the agency.

11.      Defendant the United States Army Corps of Engineers ("USACE") is an administrative agency within the Executive Branch of the United States.  Defendant Lieutenant General Robert L. Van Antwerp is the US Army Chief of Engineers and

Commanding General of the USACE.

## V.  UNNAMED INDISPENSABLE PARTIES

12.     Red River, Atchafalaya and Bayou Bouef Levee District ("RRABB") is

a political subdivision of the State of Louisiana organized for the purpose of levee

construction and maintenance.  Because RRABB's jurisdiction encompasses that portion

of the Red River Levee system in Rapides Parish at issue, and as a non-federal sponsor

under the NFIP, notice of the filing of this lawsuit was given to RRABB, an inquiry

regarding their participation was made, and RRABB was advised that they are likely an

indispensable party to this litigation.

13.     The Nineteenth Louisiana Levee District ("19th Levee District") is a

political subdivision of the State of Louisiana organized for the purpose of levee

construction and maintenance.   Because the 19th District's jurisdiction encompasses that

portion of the East Bank Levee of the Red River Levee system in Grant Parish at issue,

and as a non-federal sponsor under the NFIP, notice of the filing of this lawsuit was

given to the 19th District, an inquiry regarding their participation was made, and the 19th

District was advised that they are likely an indispensable party to this litigation.

7

## VI.  FACTS

### National Flood Insurance Program

14.     The NFIA was established pursuant to Congress' power under the Spending Clause of the United States Constitution,  Article I, Sec. 8, cl. 1.  The stated purpose for the NFIA is to provide "a reasonable method of sharing the risk of flood losses . . . through a program of flood insurance which can complement and encourage preventative and  protective measures" by means of local land-use ordinances enacted by participating States and their political subdivisions.  42 U.S.C. §§ 4001, 4022, 4102; 44 C.F.R. § 60.3 (*See also* National Flood Insurance Program: Program Description - P.2 of Exhibit "A").

15.     "In sum, Congress has mandated that in order to protect the nation's investment in property that is situated in a known hazardous area, the community in which that property is located must participate in the [NIFP] to be eligible for federal assistance, and further, that property located in a participating community must be covered by flood insurance not only to be eligible for direct federal assistance, but also to receive mortgage money from a federally supervised private institution."  Texas Landowners Right Association v. Harris, 453 F.Supp. 1025, 1028 (D.C. Cir. 1978) (finding the NFIA facially constitutional as a "voluntary" federal program) (cited with approval in Adolf v. FEMA, 854 F.2d 732 (5th Cir. 1988) (finding that a parish was not

8

unconstitutionally "coerced" into enacting land-use ordinances as a condition of the NFIP)).

16.     Under the NFIP, the term "community" means "any state or area or political subdivision thereof . . ., which has authority to adopt and enforce flood plain management regulations for the areas within its jurisdiction."  44 C.F.R. § 59.1.

17.     The NFIP requires the designation of Special Flood Hazard Areas ("SFHAs") in participating communities within a flood plain subject to a 1% or greater chance of flooding in any given year, commonly referred to as the 100-year flood.  44 C.F.R. § 59.1.  Participating communities are required to enact and enforce land use ordinances in accordance with the NFIP "flood plain management plan" which mandates, among other things, that all new or substantially improved buildings are constructed at or above the 1% annual-flood-chance elevation.  44 C.F.R. § 60.3 (*see also* p. 13 of Exhibit "A").

18.     To join the NFIP, a community must submit an application package that includes the following information: (1) Application; (2) Resolution of intent to participate in the NFIP and a commitment to recognize flood hazards and carry out the objectives of the program; and (3) Flood plain management regulations that meet or exceed the minimum flood plain management requirements of the NFIP.  (*See* "Joining the National Flood Insurance Program" - Exhibit "B").

19.     Any community identified by FEMA as being flood prone that fails to join

the NFIP within one year of being notified of mapping will be sanctioned as follows:

A.     Property owners will not be able to purchase NFIP flood insurance
policies and existing policies will not be renewed.

B.     Federal grants or loans for development will not be available
in identified flood hazard areas under programs
administered by Federal agencies such as the Department of
Housing and Urban Development, Environmental Protection
Agency, and Small Business Administration.

C.     Federal disaster assistance for flood damage will not be provided to
repair insurable buildings located in identified flood hazard areas.

D.     Federal mortgage insurance or loan guarantees, such as those
written by the Federal Housing Administration and the
Department of Veteran Affairs, will not be provided in identified
flood hazard areas.

E.     Federally insured or regulated lending institutions, such as banks
and credit unions, are allowed to make conventional loans for
insurable buildings in flood hazard areas of nonparticipating
communities. However, the lender must notify applicants that the
property is in a flood hazard area and that the property is not
eligible for Federal disaster assistance.  Some lenders may
voluntarily choose not to make these loans.

(*See* "Joining the National Flood Insurance Program" - Exhibit "B").

20.     As part of the NFIP, FEMA identifies flood prone areas through Flood

Insurance Studies ("FIS") and publishes the findings on Flood Insurance Rate Maps

("FIRMs").  (*See* National Flood Insurance Program: Program Description - P. 8 of

Exhibit "A").

21.     A participating community must adopt any new or revised FIRM issued by FEMA and amend its ordinances to incorporate the data within six months of the effective FIRM date or it will be suspended from the NFIP and endure the same sanctions as non-participation.  44 C.F.R. § 59.24 (*see also* "Adoption of Flood Insurance Rate Maps" - P. 6 of Exhibit"C").

22.     In 1994, Congress amended the NFIA with the National Flood Insurance Reform Act, which requires that FEMA assess its flood hazard map inventory at least once every five years.  (*See* "National Flood Insurance Program: Program Description" - P. 8 of Exhibit "A").   As a result, FEMA begin performing new Flood Insurance Studies.

23.     In 1997, FEMA designed a plan to modernize the flood-mapping program. This process, called Flood Map Modernization ("Map Mod"), will produce new digital maps ("DFIRM") to identify flood zones based on the 100-year flood standard.  (*See* "The NFIP and Levees" - Exhibit "D" and "National Flood Insurance Program: Program Description" - P. 15 of Exhibit "A").

24.     The NFIP defines a "levee" as a "a man-made structure, usually an earthen embankment, designed and constructed in accordance with sound engineering practices to contain, control, or divert the flow of water so as to provide protection from temporary flooding," and a "levee system" as "a flood protection system which consists of a levee, or levees, and associated structures, such as closure and drainage devises,

which are constructed and operated in accordance with sound engineering practices."

44 C.F.R. § 59.1.

25.     FEMA disclaims responsibility for (1) designing, operating, certifying, or

maintaining levee systems; (2) examining levees; or (3) determining how a structure or

system will perform in a flood event, and expressly directs that "communities, levee

system owners, and/or local project sponsors - not FEMA - must meet and maintain

compliance with 44 C.F.R. § 65.10 requirements if a levee system is to be accredited on a

[FIRM]."  (*See* "The NFIP and Levees" - Exhibit "D"; "Fact Sheet: Provisionally

Accredited Levee Systems" - Exhibit "E"; and P. 12 of National Flood Insurance

Program: Program Description - Exhibit "A").

26.     To comply with the NFIP, a levee system must be certified by a registered

professional engineer or a responsible Federal agency as meeting the requirements of 44

C.F.R. § 65.10.  44 C.F.R. § 65.7 (*see also* "The National Levee Challenge" – Exhibit "F").

27.     "A levee system owner can be a Federal or State agency, a water

management or flood control district, a local community, a levee district, a non-public

organization, or an individual."   (*See* "Fact Sheet: Provisionally Accredited Levee

Systems" - Exhibit "E").

28.     An Accredited Levee System under the NFIA is shown on an effective

FIRM as providing a 1% annual-chance or greater level of flood protection based on the

data and documentation required by 44 C.F.R. § 65.10.  The area landward of an

Accredited Levee System is shown as a moderate-risk area on the FIRM except for areas

of residual flooding, such as ponding areas, which will be shown as a high-risk area,

SFHA.  (*See* "Fact Sheet: Meeting the Criteria for Accrediting Levee Systems on NFIP

Flood Maps" - Exhibit "G").

29.     A De-accredited Levee System is one that is *not* shown as providing a 1%

annual-chance flood protection on an effective FIRM.  The area landward to a De-

Accredited Levee System is mapped as though the levee does not exist and marked as

an SFHA.  (*See* "Fact Sheet: Meeting the Criteria for Accrediting Levee Systems on NFIP

Flood Maps" - Exhibit "G").

30.     Heightened concern about the integrity of the nation's flood protection

systems in the wake of Hurricane Katrina in 2005 prompted FEMA, with the USACE's

cooperation, to begin to administer the NFIP as a tool to secure funding for federal

flood control through the use of the requirement that non-federal sponsors (States,

communities, local levee districts) produce data and documentation to prove

certification under 44 C.F.R. § 65.10.  The formula was simple: FEMA demands proof of

certification, the USACE claims poverty, and FEMA nonetheless de-accredits the levee

system and sets a timetable for re-mapping.  A non-federal sponsor under the weight of

this dilemma has little choice other than to fund a solution, at all costs, if possible.

31.     On August 22, 2005, FEMA issued "Procedure Memorandum 34 - Interim Guidance for Studies Including Levees" ("Memo 34" - Exhibit "H") to announce the creation of a "Levee Coordination Committee" and the divergence of the NFIP into the realm of national flood control policy, rather than simply national flood insurance policy:

> **Background:** Throughout the United States, levees protect numerous communities and large expanses of agricultural land from floods.  Their importance in mitigating flood hazards and their relevance to the National Flood Insurance Program (NFIP) are indisputable.  However, riverine and coastal levees, in the aggregate, stretch for tens of thousands of miles, and information on their location, structural integrity, and certification often is outdated or missing altogether.
>
> **Issue:** To address this challenge, a Levee Coordination Committee – including representatives from FEMA, other Federal agencies, and States – is examining current levee regulations and assisting in the development of a long-term policy that protects citizens and property, while accommodating the needs of the NFIP.  This memorandum helps to clarify the entities responsible for providing information on levees identified during a mapping project.
>
> **Action Taken:** Until the new policy is developed, this memo provides interim guidance to minimize delays in near-term mapping studies.  The attached flow chart supplements FEMA's procedure memorandums 30 and 32.  This information is in conformance with Section 65.10 of the NFIP regulations.

Citing Memo 34, FEMA began imposing deadlines on communities for submitting the required documentation to support NFIP accreditation, which effectively required non-federal sponsors to begin addressing funding for levee maintenance on both State and

Federal levees.

32.     On March 16, 2007, FEMA issued "Revised Memorandum 43 - Guidelines for Identifying Provisionally Accredited Levees" ("R-Memo 43" - Exhibit "I") to provide additional time for communities to produce accreditation documentation for "levees presently shown as providing base flood protection on the effective FIRM."  (P. 3 of Exhibit "I").  Under R-Memo 43, provisional accreditation would be granted for 24 months to a qualifying community or levee owner under a PAL Agreement, pending proof of levee certification.   The issue of deficiencies in federally-maintained levees was vaguely addressed in R-Memo 43, as follows:

> For levees that are included in the U.S. Army Corps of Engineers (USACE) Federal Program, FEMA will actively coordinate with the appropriate USACE district to determine which projects do not provide protection from the base flood.  In a collaborative effort, existing data or project-specific information will be evaluated to identify and validate non-accredited levees in the USACE's inventory. . ...

(P. 2 of Exhibit "I").  R-Memo 43 provided "for five scenarios intended to determine when a levee does or does not qualify for the PAL designation."  The scenarios expressly differentiated between levees in and out of the "the Federal system" or "Federal inventory" and offered forms for requesting PAL status for each.

33.     For FEMA to apply the PAL designation to a levee system, a community or levee system owner is required to sign a "PAL agreement" agreeing to provide data and documentation required for compliance with 44 C.F.R. § 65.10 to FEMA within 24

months.   If not timely accomplished, FEMA will de-accredit the levee system and

initiate a map revision to the affected FIRM panel, which must occur in no less than 18

months.  In addition, the PAL notation is removed from the effective FIRM and

replaced by a high-risk SFHA rating.  (*See* "Fact Sheet: Provisionally Accredited Levee

Systems" - Exhibit "E").

34.     There is no provision in the NFIP, and no guidance has been issued by

either FEMA or the USACE, providing for a solution for the Map Mod program in

instances where a lack of certification or de-accreditation is based on unfulfilled federal

flood control obligations.  In such an instance, a PAL Agreement is used as a device to

lure the non-federal sponsor into the unconstitutional squeeze between FEMA and the

USACE.


**The Central Louisiana Red River Levee System**

35.     The Red River Levee System in central Louisiana consists of the Lower

Red River South Bank Levee on the Alexandria-side of the river ("South Bank Levee")

and the Red River East Bank Levee on the Pineville-side of the river ("East Bank

Levee").

36.     The levees on both banks of the Red River were designed and constructed

by the Federal Government, through the USACE, under separate congressional Acts

16

which provide for different flood control maintenance obligations, as explained below.

37.     All communities along the Red River Levee System are participants in the

NFIP, and the entire Red River Levee System is shown on the current, effective FIRMs

as providing adequate protection from the 1% annual-chance-flood.

38.     The Red River Levee System is the subject of FEMA's Map Modernization

program.

### The South Bank Levee (Alexandria-side)

39.     The South Bank Levee is a part of the USACE's congressionally

authorized Mississippi River and Tributaries (MR&T) Project under the Flood Control

Act of 1928, the nation's first comprehensive flood control and navigation act, which is

designed to control a "project flood" in excess of the flood of 1927 that took 200 lives,

displaced over 600,000 people, and caused damage amounting to $1.5 billion at today's

prices.  ("The Mississippi and Tributaries Project" - Exhibit "J").

40.     Section 3 of the Act of 1928 authorized the USACE to expropriate land and

to construct the MR&T system upon States and local levee districts agreeing to

assuming responsibility for minor maintenance, such as "cutting the grass, removal of

weeds, local drainage, and minor repairs of main river levees."  Public Law No. 391 -

70th Congress.   Implicitly, the Act left to the Federal Government the responsibility for

major maintenance, which has been the USACE's interpretation and accepted practice throughout the life of the project.

41.    The USACE has consistently acknowledged its responsibility for major maintenance for the South Bank Levee, and that minor maintenance is the responsibility of the non-federal sponsor, RRABB.  (*See* letter of April 19, 2010, from USACE to RRABB - Exhibit "K"  ("The right descending bank . . . is a Mississippi River & Tributaries (MR&T) project.  This means the USACE has major maintenance responsibilities on the levee system and is provided annual appropriated dollars in order to perform this maintenance.  The local sponsor is responsible for minor maintenance (i.e., mowing).")).

42.    The Federal Government, through the USACE, is responsible for ensuring that the South Bank Levee meets the standards for accreditation under the NFIP.

43.    The South Bank Levee was rated "outstanding" by the USACE in 2001 and 2003 - 2006, and "satisfactory" in 2002.  In 2007 and 2008, the system was rated "minimally acceptable."  (Exhibit "R").

### The East Bank Levee (Pineville-side)

44.    The East Bank Levee was authorized by the federal Flood Control Act of 1941 (Public Law No. 77-228) as an extension of the "Grant Parish Below Colfax" project authorized by the Flood Control Act of 1938 (Public Law No. 75-761).   The Act of  1941

provides, in pertinent part, as follows:

> The project for local protection on the Red River in Grant Parish below Colfax, Louisiana, authorized by the Act approved June 28, 1938, is hereby amended to add and authorize the following: Levee enlargement, new levee extension, and the construction of appurtenant drainage structures on the left bank of the Red River opposite Alexandria, for the protection of Pineville, Louisiana, and vicinity . . ., <u>subject to the provisions of section 3 of the Act approved June 22, 1936</u>.

> The protection for local flood protection on the Red River in Grant Parish below Colfax, Louisiana . . . is hereby further amended to include and to authorize the following: Levees and appurtenant drainage works on the left bank of the Red River and along Bayous Darrow and Rigolette, the improvement of the channels of Bayou Rigolette, and the separation of the channels of Bayous Darrow and Rigotlette in the Aloha-Rigolette area, Grant and Rapides Parish, Louisiana . . ., <u>subject to the provisions of section 3 of the Flood Control Act approved June 22, 1936</u>.

(Pertinent portions of the Act of 1941 - Exhibit "L") (underscore added).

45.     Unlike the Act of 1928 establishing the MR&T system, Section 3 of the Act of 1936 delegates responsibility for operation and maintenance (commonly referred to as "O&M") to the non-federal sponsors, as follows:

> That hereafter no money appropriated under authority of this Act shall be expended on the construction of any project <u>until States, political sub-divisions of, or other responsible local agencies have given assurances satisfactory to the Secretary of War that they will</u> (a) provide without cost to the United States all lands, easements, and rights of way necessary for the construction of the project except as otherwise provided herein; (b) hold and save the United States free from damages due to the constructed works; (c) <u>maintain and operate all the works after completion</u> in accordance with regulations prescribed by the Secretary of War . . ..

(Pertinent portions of the Act of 1936 - Exhibit "M") (underscore added).  Regulations

for the maintenance of local flood protection works "constructed by the United States" under the authority of Section 3 of the Act of 1936 are codified at 33 C.F.R. § 208.10.

46.     The USACE has sought federally-appropriated funds as recent as 2001 for work on the East Bank Levee.  (*See* pertinent portions of Public Law 107-66, November 12, 2001 - Exhibit "N";  *see also* pertinent portions of Public Law 101-640, November 28, 1990 - Exhibit "O"; and pertinent portions of Public Law 98-63, July 30, 1983 - Exhibit "P").

47.     As local, non-federal sponsors, RRABB and the 19th Levee District are responsible for ordinary operation and maintenance obligations on the East Bank Levee within their respective jurisdictions.

48.     The federal government is responsible for all work necessary to complete construction on the East Bank Levee and to cure construction deficiencies caused or permitted by the USACE.

49.     The portion of the East Bank Levee in Rapides Parish was rated "outstanding" by the USACE in 2001 and 2003 - 2006, "satisfactory" in 2002, and "minimally acceptable" in 2007 and 2008, and the portion in Grant Parish was rated "satisfactory" in 2001, "outstanding" in 2002 - 2006,  and "minimally acceptable" in 2007 and 2008 (P. 6 of Exhibit "Q").

## De-accreditation of the Red River Levee System

50.     On March 1, 2007, the 19th Levee District made a request to the USACE for assistance "in all phases of preparing for levee certification" for the East Bank Levee. (*See* March 1, 2007 correspondence to the USACE - Exhibit "S").

51.     On or about March 20, 2007, FEMA issued a letter to the communities and local-sponsors along the Red River Levee System of their obligation to produce documentation of levee certification under 44 C.F.R. § 65.10 in connection with the Map Mod Program.

52.     On April 9, 2007, Alexandria sent a letter to FEMA requesting PAL status for the South Bank Levee.  (Exhibit "T").   (A PAL request also was made, and granted, for Bayou Roberts and Bayou Phillips, non-federal levees maintained by Alexandria and RRABB, which were included in the de-accreditation, but are not a part of this proceeding.).

53.     On April 12, 2007, RRABB, as the non-federal sponsor of the Red River Levee System, issued a formal demand to the USACE, stating  "We have been requested by the FEMA and the City of Alexandria to provide certification of the levees in our jurisdiction.  We are requesting assistance from the U.S. Army Corp of Engineers to certify the state and federal levees in the RRABB Levee District under your jurisdiction."  (Exhibit "U").

54.     The USACE responded to RRABB by letter of May 17, 2007,

acknowledging its obligation to perform the certification study in the RRABB district, as

follows:

> We will be able to perform the certification of the Federal levees, but we
> feel that it is out of our jurisdiction to perform certification for the state
> levees.  However, we will be happy to provide assistance to whomever
> you choose to perform the certification for the state levees.
>
> The Vicksburg District is currently coordinating with the Mississippi
> Valley Division and Corps of Engineers headquarters in developing
> procedures to implement <u>the new USACE levee certification guidelines</u>.
> After the details of the levee certification procedure are finalized at the
> Division and Corps of Engineers Headquarters levels, we will initiate a
> certification study for the Federal levees within your district.  I
> recommend that you request a Provisionally Accredited Levee (PAL)
> agreement from FEMA, if you have not already done so, follow their
> instructions on the letter, and return to FEMA.  This will give you a two
> year accreditation of <u>your levee system</u> until a certification can be
> completed.

(Exhibit "V") (underscore added).  A similar response was directed to the 19th Levee

District on May 14, 2007.  (Exhibit "W").  The reference to "new USACE levee

certification guidelines" corresponds with FEMA's Memo 34 in August 2005 (Exhibit

"H") referencing the "new policy" being developed for levee regulations.  This marks

the point at which FEMA and the USACE began to conflate the lines between

certification under the NFIP and certification under the flood control regulations. (*See*

chart provided by USACE comparing requirements for NFIP certification and USACE

certification (Exhibit "X") and EC 1110-2-6067, stating "[s]hould [the USACE] be

22

requested to provide an NFIP levee system evaluation, [the USACE] will review all components of the entire levee system as outlined in [EC 1110-2-6067], not only design and construction as noted in the C.F.R."  (Exhibit "Y")).

55.     USACE levee certification guidelines are authorized under the Flood Control Acts of 1928 and 1936, as amended and supplemented, and the Flood Control Regulations in Title 33, "Navigation and Navigable Waters," 33 C.F.R. § 208.10, *et seq*. The USACE derives no authority under the NFIA to establish standards for the Map Mod program beyond those authorized by the NFIP.  Likewise, the NFIP does not alter the USACE's responsibilities for construction and maintenance of federal flood control structures.

56.     Alexandria and RRABB entered into a PAL agreement on May 9, 2007, for the South Bank Levee (Exhibit "T") and Pineville and RRABB entered into a PAL Agreement for the East Bank on June 13, 2007 (Exhibit "Z").

57.     Despite the various requests to and responses from the USACE, no evaluation documents for accreditation under the NFIP were submitted by the USACE to FEMA on the Red River Levee System until October of 2009, *after* the PAL agreements had expired.

58.     On October 2, 2009, the USACE issued a Certification Report for the South Bank Levee (Exhibit "R") and the East Bank Levee (Exhibit "Q") advising FEMA that

the systems do "not meet the requirements for certification for the 1% annual chance exceedance flood."  The standards applied by the USACE exceeded those previously applied for NFIP accreditation.

59.    On the South Bank Levee, the USACE found maintenance deficiencies relating to "sand boils and sinkholes at or very near the levee toe."  (Exhibit "R").  These conditions constitute major maintenance items for which the USACE is responsible.

60.    On the East Bank Levee, the USACE found deficiencies in and because of "as-built" conditions originally constructed by the USACE and "structural works" thereafter permitted by the USACE.  (Exhibit "Q"; *See also* Affidavit of City of Pineville Engineer Thomas C. David, Jr. - Exhibit "AA").  The USACE is responsible for all defects in the original construction or thereafter permitted by the USACE.

61.    The NFIP defines certification of "structural works" and "as built" conditions as follows:

> Certification of "structural works" is a statement that the works are designed in accordance with sound engineering practices to provide protection from the base flood.  Certification of "as built" conditions is a statement that the structure(s) has been built according to the plans being certified, is in place, and is fully functioning.

44 C.F.R. § 65.2(b).

62.    On December 30, 2009, FEMA sent to RRABB a "Notification of De-accreditation of Red River Levees."  (Exhibit "BB").  The notification points to the lack

24

of certification documents as the reason for de-accreditation, and makes no reference to the USACE's Certification Reports.

63.     It is impossible for Plaintiffs to comply with FEMA's demand for certification documents unless and until the USACE cures the alleged deficiencies found by the USACE for which the Federal Government itself is responsible.


**Post De-accreditation**

64.     On January 11, 2010, FEMA attended a meeting with the USACE, RRABB, and various community and parish officials in response to the levees' de-accreditation.

65.     On February 4, 2010, FEMA and the USACE held a public meeting on levee certification issues.

66.     On March 15, 2010, RRABB sent correspondence to the USACE inquiring about the USACE's authority and responsibility for the Red River Levee System.  (*See* March 15, 2010 correspondence from RRABB to the USACE - Exhibit "CC").  On April 19, 2010, the USACE acknowledged that it has "major maintenance responsibilities on the [South Bank] levee system and is provided annual appropriated dollars in order to perform this maintenance," but defended its inactivity on the basis that "additional appropriated funding would be required for design and construction" of the maintenance required for re-accreditation.  (*See* April 19, 2010 correspondence - Exhibit

"K").

67.    On April 28, 2010, at the request of FEMA, RRABB issued a resolution to request that the USACE New Orleans District certify the Red River Levee System within its jurisdiction and a resolution to request assistance from the Vicksburg District in repairing deficiencies with the levee system within its jurisdiction. (Exhibit "DD").

68.    On June 7, 2010, a public meeting among local officials was held to discuss re-purposing $16,362,354 in Federal Community Development Block Grant ("CDBG") funds awarded for local projects as disaster relief to Hurricanes Gustav and Ike. Faced with de-accreditation and the risk of suspension from the NFIP, local officials agreed to seek approval to dedicate the CDBG funds for the repairs required for re-accreditation. The process required obtaining permission from the USACE to use non-USACE funds for USACE repair activities, and permission from the Department of Housing and Urban Development ("HUD") to re-purpose the CDBG funds for use on a federal project.

69.    On June 10, 2010, the USACE advised RRABB that should HUD approve the use of CDBG funds for maintenance on the South Bank Levee, "please request that HUD also approve the transfer of the funds to the USACE since the USACE will actually have to perform this work." (Exhibit "EE").

70.    On June 14, 2010, the Rapides Parish Police Jury (the administrator for the

CDBG funds) voted to make "levee certification" the primary project under the CDBG and to submit an Amended Application to the Louisiana Recovery Authority ("LRA"). (Exhibit "FF").   On June 25, 2010, LRA approved the Amended Application to allow levee certification, and all things related thereto, to be the primary project under the CDBG.

71.     On July 14, 2010, HUD confirmed to LRA that "[b]ased on the USACE's lack of funding to address the current conditions of the levee system, the Louisiana Office of Community Development and Rapides Parish may transfer disaster CDBG funding to the Vicksburg District to meet the urgent need national objective by safeguarding the levee system protecting Rapides and surrounding areas."   (Exhibit "GG").

72.     While taking steps to obtain approval for use of the CDBG funds, Alexandria, Pineville and RRABB continued to pursue the required plans to present a bonafide plan for repairs to the federal levee system, hopeful that FEMA would extend the timetable for issuance of the new DFIRM.  At a meeting of officials at the local office of U.S. Representative Rodney Alexander on October 27, 2010, however, FEMA notified Plaintiffs that it will not relax the Map Mod timetable and that preliminary maps for the area may be issued as early as January 2011. (*See* letter of November 16, 2010, from U.S. Representative Rodney Alexander objecting to FEMA's position - Exhibit "HH").

73.     Based on best estimates, it is doubtful the South Bank Levee can be repaired within the timetable proposed by FEMA for final issuance of the new DFIRM, and it will be impossible for the repairs on the East Bank Levee to meet the timetable.

74.     Nevertheless, notwithstanding the impossible FEMA timetable, Plaintiffs are continuing efforts to make the repairs demanded by FEMA with the use of the CDBG funds, and will continue to do so unless and until relief is obtained through these proceedings.

## Absence of NFIA Administrative Remedy and Final Agency Action Under the APA

75.     The NFIA provides for an administrative process to challenge FEMA's "flood elevation determinations" under the NFIP.  42 U.S.C. 4104; 44 CRF § 67.1, *et seq.* "The <u>sole basis</u> for such appeal shall be the possession of knowledge or information indicating that the elevations being proposed by the Director with respect to an identified area having special flood hazards are <u>scientifically or technically incorrect</u>, and the <u>sole relief</u> which shall be granted under the authority of this section . . . is a <u>modification of the Director's proposed determination</u> accordingly." 42 U.S.C. § 4104 (b) (underscore added).

76.     A challenge to a flood elevation determination under the NFIP administrative process must be filed "during the ninety-day period following the

second publication" of the newly-issued preliminary FIRM.  42 U.S.C. § 4104(b).

77.    The NFIA does not provide for an administrative process to contest the constitutionality of the NFIA or NFIP as applied, or to interpret, challenge or enforce the obligations of the USACE in connection with NFIP accreditation.

78.    Plaintiffs do not, in this proceeding, challenge FEMA's flood elevation determinations for the remapping of the Red River Levee System, but hereby expressly reserve the right seek all available administrative and judicial remedies if and when those claims ripen.

79.    It will cause irreparable hardship for Plaintiffs to pursue these claims through the NFIP administrative process, given the explicit statutory limitation on the scope of NFIP administrative relief, the forced requirement that Plaintiffs immediately use their resources to satisfy federal obligations, and the timetable imposed by FEMA. Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 743-44 (1997) ("[W]here a regulation requires immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated.").

80.    Further, to require Plaintiffs to expend irretrievable state resources to satisfy federal obligations while awaiting a vain and useless administrative review process would preclude any judicial review of Defendants' patently unconstitutional

actions and thus offend the Due Process Clause under the Fifth Amendment of the

United States Constitution.

81.     Under the circumstances, the de-accreditation of the Red River Levee

System is a reviewable final agency action under the Administrative Procedures Act, 5

U.S.C. § 701, *et seq.*


## VII.  CLAIMS

### Count One (South Bank-Alexandria): Declaratory Judgment
*The USACE is responsible for the conditions resulting in de-accreditation*
*to the MR&T bank*

82.     Paragraphs 1 through 81 are incorporated by reference.

83.     Under 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the

USACE has sole authority and responsibility under the Flood Control Act of 1928 and

the regulations promulgated in Title 33 of the Code of Federal Regulations for the

conditions on the South Bank Levee causing NFIP de-accreditation.


### Count Two (East Bank-Pineville): Declaratory Judgment
*The USACE is responsible for original construction conditions and for*
*revisions to USACE-approved structural works, as required for NFIP accreditation*

84.     Paragraphs 1 through 83 are incorporated by reference.

85.      Under 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the

USACE has sole authority and responsibility under the Flood Control Act of 1936 and the regulations promulgated in Title 33 of the Code of Federal Regulations for the conditions on the East Bank Levee causing NFIP de-accreditation.

### Count Three (Both Plaintiffs): Spending Clause Violation
*The obligation to assume Federal flood control liability*
*is not rationally related to the purpose of the NFIP*

86.    Paragraphs 1 through 85 are incorporated by reference.

87.    It is firmly established that "Congress may condition grants of spending power only in ways reasonably related to the purpose of the federal program." South Dakota v. Dole, 483 U.S. 214, 206 (1987); New York v. United States, 505 U.S. 144, 167 (1992).

88.    The purpose of the NFIP is plainly stated in 42 U.S.C. § 4001(a) as providing for a federally-subsidized flood insurance program in which States participate by implementing local land-use ordinances.

89.    Federal flood control policy, including specifically the construction and maintenance of Federal levees, is administered by the USACE under the authority of Title 33, "Navigation and Navigable Waters," Part 208, "Flood Control Regulations."

90.    Conditioning NFIP accreditation on a State or its political subdivisions assuming liability for a Federal flood control obligation lacks a rational relation to the

purpose for the NFIP as required by the Spending Clause of Article I of the United

States Constitution.

### Count Four (Both Plaintiffs): Spending Clause
### and Tenth Amendment Violations

*Conditioning NFIP accreditation on the assumption of Federal
flood control obligations violates the "clear-notice" requirement
of the Spending Clause and thus the Tenth Amendment*

91.     Paragraphs 1 through 90 are incorporated by reference.

92.     Under the Spending Clause, "Congress has broad power to set the terms

on which it disburses federal money to States." Arlington Central School District Board

of Education v. Murphy, 548 U.S. 291, 296 (2006) (*citing* South Dakota v. Dole, 483 U.S.

203, 206 (1987)).  "[B]ut when Congress attaches conditions to a State's acceptance of

federal funds, the conditions must be set out unambiguously."  Id. (*citing* Pennhurst

State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (1981) and Bd. of Educ. v. Rowley, 458

U.S. 176, 204 (1982)). "'Legislation enacted pursuant to the spending power is much in

the nature of a contract,' and therefore, to be bound by 'federally imposed conditions,'

recipients of federal funds much accept them 'voluntarily and knowingly.'" Id. (*quoting*

Pennhurst, 451 U.S. at 17). "States cannot knowingly accept conditions of which they are

'unaware' or which they are 'unable to ascertain.'" Id. (*quoting* Pennhurst, 451 U.S. at

17).

93.     By insisting that Congress speak with a clear voice when exercising its

spending power, States are able "to exercise their choice knowingly, cognizant of the consequences of their participation." <u>Pennhurst</u>, 451 U.S. at 17.

94.     There is no reference in the NFIA, the history of the Act, the implementing regulations for the NFIP, or in any FEMA publication that Congress intended to condition a State's participation in the NFIP on its assumption of liability or responsibility for flood control obligations owed by the Federal Government.

95.     In the absence of express Congressional authority, FEMA is prohibited from conditioning the accreditation of the Red River Levee System on a request that a State or its political subdivisions assume liability or responsibility for a Federal flood control obligation.

96.     FEMA's de-accreditation of the Red River Levee System is unconstitutional under the Tenth Amendment.

### Count Five (Both Plaintiffs): Tenth Amendment Violation
*Coercion and commandeering of State officials and
resources to satisfy a Federal obligation violates sovereignty
reserved to the States under the Tenth Amendment*

97.     Paragraphs 1 through 96  are incorporated by reference.

98.     The Supreme Court has "made clear that the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." <u>Printz v. U.S.</u>, 521 U.S. 898, 925 (1997).  This prohibition is offended by

"requiring the States either to legislate pursuant to Congress's directions, or to implement an administrative solution to a federal regulatory program." Id. at 926 (*citing* New York v. U.S., 505 U.S. 144 (1992)).

99.     The extent of the burden imposed on the State need not be balanced against the importance of the federal purpose when "the whole object of the law [is] to direct the functioning of the state executive, and hence to compromise the structural framework of dual sovereignty." Printz, 521 U.S. at 926.

100.    "Where a federal interest is sufficiently strong to cause Congress to legislate, it  must do so directly; it may not conscript state governments as its agent." New York, 505 U.S. at 178.

101.    FEMA's de-accreditation of the Red River Levee System based on flood control conditions for which the Federal Government is responsible constitutes unlawful coercion of State sovereignty in violation of the Tenth Amendment of the Unites States Constitution.


### Count Seven (All Plaintiffs): Temporary Restraining Order

102.    Paragraphs 1 through 101  are incorporated by reference.

103.    The issuance of the preliminary maps showing the areas behind the Red River levee system as being in flood-prone zones will trigger the un-achievable

timetable established by FEMA for repairing the levees before issuance of the effective

FIRM, which mandates onerous flood insurance and land-use regulation requirements

on the community and its citizenry. (*See* "Rapides Parish Flood Study Timeline" -

Exhibit "II" and "Adoption of Flood Insurance Rate Maps," p. 3 of Exhibit "C").

104.    Under Rule 65 of the Federal Rules of Civil Procedure, a preliminary

injunction is authorized upon showing:

(1)    A substantial likelihood of success on the merits,

(2)    A substantial threat that plaintiff will suffer irreparable injury if the
injunction if denied,

(3)    That the threatened injury outweighs any damage that the
injunction might cause defendants; and

(4)    That the injunction will not disserve the public interest.

Sugar Busters, LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999).

105.    Rule 65(b) authorizes a temporary restraining order pending a hearing on

a request for a preliminary injunction upon proof that "immediate and irreparable

injury, loss, or damage will result to the movant before the adverse party can be heard

in opposition. . .."

106.    The evidence and settled authority presented herein demonstrates that

Plaintiffs have a substantial likelihood of success on the merits.

107.    Defendants unconstitutional acts have caused and will continue to cause

irreparable harm if unabated.  "It has been repeatedly recognized by the federal courts that violation of constitutional rights constitutes irreparable injury as a matter of law." Springtree Apartments, ALPIC v. Livingston Parish Council, 207 F.Supp.2d 507, 514 (M.D. La. 2001) (*citing* Elrod v. Burns, 427 U.S. 347 (1976)).

108.    The threat of continuing constitutional violations and the fiscal impact to the Plaintiffs and the citizens along the Red River Levee System outweigh any harm to FEMA caused by enjoining the issuance of the anticipated preliminary FIRM pending a hearing on Plaintiffs request for preliminary injunction.

109.    Enjoining FEMA's issuance of the preliminary revised FIRM for the Red River Levee System pending a hearing on Plaintiffs' request for a Preliminary Injunction will positively serve the public interest.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    For entry of a Temporary Restraining Order, immediately and without bond, enjoining FEMA from issuing the preliminary FIRM and/or DFIRM panels for the Red River Levee System for 14 days, or as thereafter extended in accordance with FRCP 65, pending a hearing and determination by the Court on Plaintiffs' request for preliminary injunction;

B.    For a Declaration of rights and obligations under the NFIA and the Flood Control Acts;

C.      For an Order declaring FEMA's administration of the NFIP
        unconstitutional as applied herein;

D.      For a Preliminary and, in due course, Permanent Injunction
        enjoining FEMA from de-accrediting the Red River Levee System
        from the NFIP based on levee conditions for which the Federal
        Government is responsible; and

E.      For all other relief the Court deems just and proper.


                        Respectfully submitted,

                        **THE FAIRCLOTH LAW GROUP, LLC**


                        By:   /s/ Jimmy R. Faircloth, Jr.
                                Jimmy R. Faircloth, Jr. (T.A.)      #20645
                                Barbara Bell Melton                 #27956
                                1412 Centre Court, Ste. 203
                                Alexandria, LA 71301
                                Phone 318-619-7755
                                Fax 318-619-7744

                        **ATTORNEYS FOR PLAINTIFF,**
                        **CITY OF ALEXANDRIA, LOUISIANA**

                                AND

**VILAR & ELLIOTT, LLC**


By:  /s/ Mark F. Vilar

       Mark F. Vilar            #25918

       Charles D. Elliott      #22355

       Aaron L. Green        #30530

       P.O. Box 12730

       Alexandria, LA 71315-2730

       Phone 318-442-9533

       Fax 318-442-9532

**ATTORNEYS FOR PLAINTIFF,**
**CITY OF PINEVILLE, LOUISIANA**


## <u>VERIFICATION OF NOTICE</u>

On December 17, 2010, a courtesy copy of this Compliant was forwarded to the U.S. Attorney for the Western District, Stephanie Finley, and the Civil Chief for the Western District in Lafayette, Louisiana, via electronic mail and by facsimile. The cover letter to Ms. Finley advised that the Plaintiffs are seeking a Temporary Restraining Order.


       /s/ Jimmy R. Faircloth, Jr.

       Jimmy R. Faircloth, Jr.

## LIST OF EXHIBITS ATTACHED TO ORIGINAL COMPLAINT

National Flood Insurance Program: Program Description. . . . . . . . . . . . . . . . . . . . . . . . A

Joining the National Flood Insurance Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B

Adoption of Flood Insurance Rate Maps. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C

The NFIP and Levees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D

Fact Sheet: Provisionally Accredited Levee Systems. . . . . . . . . . . . . . . . . . . . . . . . . E

The National Levee Challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . F

Fact Sheet: Meeting the Criteria for Accrediting Levee Systems. . . . . . . . . . . . . . . . G

Procedure Memorandum 34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H

Revised Procedure Memorandum 43. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

The Mississippi and Tributaries Project. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J

April 19, 2010 letter from USACE to RRABB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . K

Pertinent portions of the Act of 1941. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L

Pertinent portions of the Act of 1936. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . M

Pertinent portions of Public Law 107-66, November 12, 2001. . . . . . . . . . . . . . . . . N

Pertinent portions of Public Law 101-640, November 28, 1990. . . . . . . . . . . . . . . . O

Pertinent portions of Public Law 98-63, July 30, 1983. . . . . . . . . . . . . . . . . . . . . . . P

East Bank - Corps Evaluation Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Q

South Bank - Corps Evaluation Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . R

March 1, 2007 letter from 19th Levee District to USACE . . . . . . . . . . . . . . . . . . . . . . . . . . . . S

April 9, 2007 letter from COA to FEMA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  T

 April 12, 2007 letter from RRABB to USACE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  U

May 17, 2007 letter from USACE to RRABB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  V

May 14, 2007 letter from USACE to the 19th Levee District. . . . . . . . . . . . . . . . . . . . . . W

Chart – NFIP Certification v. USACE Certification.. . . . . . . . . . . . . . . . . . . . . . . . . . . .  X

EC 1110-2-6067. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Y

City of Pineville/ RRABB PAL Agreement of June 13, 2007. . . . . . . . . . . . . . . . . . . . . .  Z

Affidavit of City of Pineville Engineer Thomas C. David, Jr. . . . . . . . . . . . . . . . . . . . . AA

December 30, 2009 - "Notification of De-accreditation of Red River Levees". . . . . . . .  BB

March 15, 2010 letter from RRABB to USACE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  CC

April 28, 2010 RRABB Resolutions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DD

June 10, 2010 letter from USACE to RRABB. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  EE

June 14, 2010 - RPPJ Minutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   FF

July 14, 2010 letter from HUD to LRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GG

November 16, 2010 letter from U.S. Rep. Rodney Alexander to FEMA. . . . . . . . . . . .  HH

Rapides Parish Flood Study Timeline. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  II

Civil Cover Sheet

Verification of City of Alexandria/Verification of City of Pineville