UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CITY OF ALEXANDRIA ,ET AL. | CIVIL ACTION 10-1849 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss (Record Document 21) filed by Defendants, the Federal Emergency Management Agency ("FEMA"); the United States Department of Homeland Security; W. Craig Fugate in his official capacity as Administrator of FEMA; the United States Army Corps of Engineers ("USACE"); and Lieutenant General Robert L. Van Antwerp in his official capacity as Chief of Engineers and Commanding General of the USACE. The Motion to Dismiss was filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and, alternatively, Rule 12(b)(6). Defendants argue that this Court lacks subject matter jurisdiction, as Congress has not waived the United States of America's sovereign immunity for Plaintiffs' action. Alternatively, they contend that the complaint fails to set forth a claim upon which relief may be granted. Plaintiffs opposed the Motion to Dismiss. See Record Documents 25 and 28. For the reasons which follow, the Motion to Dismiss is **GRANTED** pursuant to Rule 12(b)(1).[1]

---

[1]The Court did not reach Plaintiffs' alternative Rule 12(b)(6) Motion to Dismiss because there is no subject matter jurisdiction over the instant matter at this time. Accordingly, the Rule 12(b)(6) Motion to Dismiss, along with the Motion for Preliminary Injunction (Record Document 10) and the Motion for Protective Order (Record Document 23), are **DENIED AS MOOT**.

**I.     BACKGROUND.**

The Plaintiffs in this matter are the City of Alexandria, Louisiana, and the City of Pineville, Louisiana. See Record Document 1. In short, they allege that FEMA's de-accreditation of the Red River Levee System in Central Louisiana from the National Flood Insurance Program ("NFIP"), because the USACE found the levees did not meet certification standards, was in violation of the Spending Clause and the Tenth Amendment. See id. at ¶ 1. Plaintiffs seek: (1) a declaration of rights and obligations under the National Flood Insurance Act ("NFIA") and the Flood Control Acts of 1928 and 1936; (2) an order declaring FEMA's application of NFIA unconstitutional under the Spending Clause and the Tenth Amendment; and (3) preliminary and permanent injunctions enjoining FEMA from de-accrediting the Red River Levee System from the NFIP based on levee conditions for which the Federal Government is responsible. See Record Document 1 at ¶ 4.

In their Motion for Preliminary Injunction, Plaintiffs specifically ask the Court to enjoin FEMA from the issuance of a preliminary or revised Flood Insurance Rate Map ("FIRM") or Digital FIRM ("DFIRM") for the Red River Levee System until a final hearing and determination of the merits of this action. See Record Document 10. The Court set a March 7, 2011 hearing on the Motion for Preliminary Injunction. See Record Documents 16 and 18.

**Federal Statutory and Regulatory Scheme**

The NFIA is Congress's attempt to prevent the personal and economic devastation caused by flooding in the United States. See County of Monmouth v. FEMA, No. 09-769, 2009 WL 3151331, *03 (D.N.J. Sept. 24, 2009), citing 42 U.S.C. § 4001(a). The statute attempts to achieve this goal through a combination of flood insurance and land use

restrictions in flood prone areas. See id., citing 42 U.S.C. § 4002. The National Flood Insurance Program ("NFIP"), which was created by the NFIA, makes flood insurance available to the owners and lessees of land located in participating communities. See id., citing 42 U.S.C. § 4002. Only communities that enact land use regulations consistent with the statute may participate. See id., citing 42 U.S.C. § 4022(a)(1). Participation in the NFIP is voluntary. See Adolph v. FEMA, 854 F.2d 732, 735 (5th Cir. 1988).

FEMA is empowered to implement the NFIP. See id., citing 42 U.S.C. §§ 4003, 4011(a). As part of the implementation program, FEMA is required to assess the need to revise and update existing flood plain maps and to produce new Flood Insurance Study ("FIS") reports and FIRMs when necessary. See id., citing 42 U.S.C. §§ 4101(e), (f)(1); 4102. In 1994, Congress amended the NFIA and began to require FEMA to assess its flood hazard map inventory at least once every five years. See Record Document 1 at ¶ 22.

The FIS determines, among other information, the "base flood." See 44 C.F.R. § 64.3. The "base flood" is the flood having a one percent chance of being equaled or exceeded in any given year. See 44 C.F.R. 59.1.[2] FIRMs are prepared after a FIS or a restudy has been completed. See 44 C.F.R. § 64.3. They are official maps of a community, on which the Federal Insurance Administrator has delineated both the special hazard areas and the risk premium zones applicable to the community. See 44 C.F.R. § 59.1. FIRMs also depict the areas in the community subject to inundation by the "base flood." See id.

---

[2]The base flood is also known as the 100 year flood. See Record Document 21 at 14.

The NFIP defines a "levee" as a "a man-made structure, usually an earthen embankment, designed and constructed in accordance with sound engineering practices to contain, control, or divert the flow of water so as to provide protection from temporary flooding," and a "levee system" as "a flood protection system which consists of a levee, or levees, and associated structures, such as closure and drainage devises, which are constructed and operated in accordance with sound engineering practices." Record Document 1 at ¶ 24, citing 44 C.F.R. § 59.1. FEMA has promulgated regulations and policies regarding its treatment of uncertified levees when establishing base flood elevations. See Record Document 21 at 8. "FEMA will only recognize in its flood hazard and risk mapping effort those levee systems that meet, and continue to meet, minimum design, operation, and maintenance standards that are consistent with the level of protection" associated with the base flood. See id., citing 44 C.F.R. § 65.10. To be recognized by FEMA as providing this type of protection, a community or other party seeking recognition must provide FEMA with specific certified data and analyses. See id., citing 44 C.F.R. § 65.10. Pursuant to 44 C.F.R. § 65.10(a):

> the types of information FEMA needs to recognize, on NFIP maps, that a levee system provides protection from the base flood . . . must be supplied to FEMA by the community or other party seeking recognition of such levee system at the time a flood risk study or restudy is conducted, when a map revision . . . is sought based on a levee system, and upon request by the [FEMA] during the review of previously recognized structures. The FEMA review will be for the sole purpose of establishing appropriate risk zone determinations for NFIP maps and shall not constitute a determination by FEMA as to how a structure or system will perform in a flood event.

"Data submitted to support that a given levee system complies with the [required] structural requirements . . . must be certified by a registered professional engineer. . . . In lieu of these structural requirements, a Federal agency with responsibility for a levee design may

certify that the levee has been adequately designed and constructed to provide protection against the base flood." 44 C.F.R. § 65.10(e).

The NFIA provides for consultation with the affected community during the flood hazard study process and provides a carefully deliberated process for appeal by affected communities and owners/lessees of real property within the community who believe that their property rights may be adversely impacted by the proposed base flood elevation determinations. See Record Document 21 at 9. Before a preliminary FIRM becomes final and legally effective, the NFIA requires FEMA to publish for comment the proposed base flood elevations ("BFEs") in the Federal Register, by direct notification to the community, and twice in a prominent local newspaper. See 42 U.S.C.A. § 4104. The newspaper notices must be published within ten days of each other. Id. The second newspaper publication initiates a 90-day appeal period of the proposed BFEs. See 42 U.S.C.A. § 4104(a) and (b). The sole basis for appealing is "the possession of knowledge and information indicating that the elevations being proposed by the Director with respect to an identified area having special flood hazards are scientifically or technically incorrect." 42 U.S.C. § 4104(b); see also 44 C.F.R. § 67.6. The "sole relief" available to a successful appellant is modification of the proposed BFEs. Id. The FIRM becomes effective no later than six months after FEMA issues its final BFE determination. See 44 C.F.R. § 67.10.

**Factual Background Specific to the Instant Matter**

For many years, Plaintiffs in this matter have been participating communities and the levees at issue have met FEMA's accreditation standards for participation in the NFIP. See Record Document 1 at ¶¶ 7-8, 35-49; Record Document 25 at ¶ 1. In 2002, FEMA initiated a study to update the FIRMs for Rapides Parish, Louisiana. See Record

Document 21 at 11. During early 2007, FEMA requested that Plaintiffs provide proof of certification for the Red River Levee System in connection with its map modernization program. See Record Document 25 at ¶ 2. In response, Plaintiffs requested that the USACE provide certification for the federal levees along the Red River. See id. On May 17, 2007, the USACE directed the local levee district to request a Provisionally Accredited Levee (PAL) agreement from FEMA while the USACE developed and implemented procedures for the federal levees. See id. Plaintiffs secured PAL agreements, which extended accreditation of the federal levees for two additional years. See id.

The USACE did not complete its certification of the federal levees within the two-year PAL period. See id. at ¶ 3. On October 2, 2009, the USACE issued reports denying certification of the federal levees on both banks of the Red River. See id. at ¶ 4. On December 30, 2009, FEMA issued a "Notification of De-accreditation of Red River Levees (North and South Banks)," stating:

> . . . Preliminary maps were issued July 31, 2007 and the study is currently in the final stages of appeal and protest resolution.
>
> Based upon FEMA's coordination and communication with the Red River [RRABB] it has been determined that Red River Levees (North and South Banks) will no longer be shown as providing protection from the base flood elevation on the Digital Flood Insurance Rate Maps. . . .
>
> The Red River Levee (North and South Bank) must be accredited to be mapped as providing protection on the Rapides Parish parishwide DFIRMs. At this time due to the deficiency in certification, the accreditation of the Red River Levees (North and South Bank) is not possible. . . . Until certification documents are received, the levees will be de-accredited and the area currently shown as protected by the Red River Levees (North and South Bank) will be classified as a special flood hazard area . . . .

Id. at ¶ 5 (Exhibit BB); Record Document 21 at 12-13.

As late as October 27, 2010, FEMA advised (as part of a Rapides Parish briefing)

that levee certification can be submitted anytime within the flood study process. See Record Document 21 at 13. On March 25, 2011, FEMA will publicly issue new preliminary FIRMs reflecting the majority of the Alexandria and Pineville area as inundated by the 100-year flood. See Record Document 25 at ¶ 8. The release of the preliminary FIRMs on March 25, 2011 will begin the publication and notification process and the 90-day appeal period outlined above.

## II.    LAW AND ANALYSIS.

### A.    Rule 12(b)(1) Standard.[3]

Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. See F.R.C.P. 12(b)(1). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. See id. Thus, in this matter, Plaintiffs bear the burden of proof that jurisdiction does in fact exist. See id., citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.1980).

Again, "[i]n examining a Rule 12(b)(1) motion, the district court is empowered to

---

[3]As the instant motion was decided pursuant to Rule 12(b)(1), the Court need not set forth the applicable Rule 12(b)(6) standard. See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir.1977) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

consider matters of fact which may be in dispute." Ramming, 281 F.3d at 161, citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.1981). In the end, the motion should be granted only if it seems certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. Ramming, 281 F.3d at 161, citing Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998).

  **B. Sovereign Immunity.**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994). The doctrine of sovereign immunity is jurisdictional in nature. See id. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." U.S. v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965 (1983). Sovereign immunity bars not only suits against the Federal Government seeking monetary relief, but also actions seeking injunctive relief. See Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006 (1963) ("The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'").[4]

A waiver of sovereign immunity must be unequivocally expressed in statutory text

---

[4]Here, Plaintiffs have named as defendants two individual federal officers in their official capacities. The suit against these officers is essentially a suit against the Federal Government, as the officers were exercising the powers delegated to them by the sovereign. Thus, the principles of sovereign immunity likewise apply against the individual federal officers. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 693, 69 S.Ct. 1457, 1463 (1949) ("If he is exercising such powers the action is the sovereign's and a suit to enjoin it may not be brought unless the sovereign has consented.").

and will not be implied. See Lundeen v. Mineta, 291 F.3d 300, 304 (2002). "Numerous Supreme Court opinions hold that courts should construe statutes against waiver unless Congress has explicitly provided for it." Id. Therefore, "no suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued." Id. The burden is on Plaintiffs to show such consent, because they are the parties asserting federal jurisdiction. See id. Here, Plaintiffs have alleged a waiver of federal sovereign immunity for the instant claims under the Administrative Procedure Act ("APA"), claiming that the de-accreditation of the Red River Levee System was a final agency action for which there is no other adequate remedy in a court. Conversely, Defendants maintain that the NFIA precludes APA jurisdiction and that Plaintiffs have not met the prerequisite that triggers the limited waiver of sovereign immunity in the NFIA.

### C. APA's Limited Waiver of Sovereign Immunity.

The APA sets forth a general waiver of sovereign immunity:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702. Title 5, United States Code, Section 701 states that Section 702 applies "except to the extent that –

      (1)     statutes preclude judicial review; or

      (2)     agency action is committed to agency discretion by law.

5 U.S.C. § 701(a). Further, the APA provides that "[a]gency action made reviewable by statute and *final* agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). Thus, it is clear that the APA's waiver of sovereign immunity is limited.

### D.   NFIA's Limited Waiver of Sovereign Immunity and Judicial Review Provision.

The NFIA contains two explicit waivers of sovereign immunity. The first waives sovereign immunity for challenges to disallowance of flood insurance and is not applicable to this case. See 42. U.S.C. § 4072. The second waiver relates to flood elevation determinations and provides:

> Any appellant aggrieved by any *final* determination of the Director upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination. . . . During the pendency of any such litigation, all final determinations of the Director shall be effective for the purposes of this chapter ***unless stayed by the court for good cause shown***.

42 U.S.C. § 4104(g) (emphasis added). The scope of the NFIA's limited judicial review "shall be as provided by chapter 7 title 5 United States Code [the APA]." Id. FEMA regulations further provide that "a court's scope of review is limited to those provisions contained within 5 U.S.C. § 706, as modified by 42 U.S.C. § 4104(b)." 44 C.F.R. § 67.12. According to the Legislative History:

> Section 110 of the bill dealing with appeals, was the subject of more testimony, discussion, coordination, and committee debate than any other provision of the bill. . . . and attempts to provide an equitable balancing of all

of the interests involved in the identification and the setting of construction elevation standards f Record Document 21 at 10, citing Senate Report No. 93-583 reprinted in U.S. Code Cong. & Admin. News 1973 at 3230.

### E. Application of the APA and NFIA to the Instant Matter.

In opposing the Motion to Dismiss, Plaintiffs make clear that they "are challenging the de-accreditation of the levees, not the issuance of maps [FIRMs] and not the facial constitutionality of the NFIA itself." Record Document 25 at 17. They contend that while the flood maps may be preliminary, FEMA's decision to de-accredit the levees is final. Plaintiffs invoke the APA's waiver of sovereign immunity on the grounds that they have no other adequate remedy in a court. Specifically, they contend that the NFIA/NFIP administrative process will not resolve the issue of FEMA versus USACE authority over the levees.

The Court will first address whether the APA provides jurisdiction in this matter. While only persuasive authority, the facts of County of Monmouth v. FEMA, No. 09-769, 2009 WL 3151331 (D.N.J. Sept. 24, 2009), are very similar to the case at hand. Thus, the court's legal analysis in County of Monmouth provided crucial guidance to this Court in reaching its decision.

In County of Monmouth, FEMA issued a revised FIS and FIRM, which provisionally accredited the Bayshore Levee, based upon the results of a restudy. See id. at *1. Subsequent to the issuance of the revised FIS and FIRM, the USACE provided information to FEMA showing that the Baytown Levee did not meet the current regulatory requirements for a levee. See id. As a result, FEMA revoked the provisional accreditation, causing a greater portion of Monmouth County to lie within a flood plain. See id. FEMA continued

the study and issued a second revised FIS which reflected the declassification of the Bayshore Levee. See id.

The County filed suit challenging, among other things, FEMA's reclassification of the Bayshore Levee. See id. The County argued that such reclassification was arbitrary and capricious. See id. In the context of this argument, the County argued:

> It is the County's contention that the waiver of sovereign immunity found at 42 U.S.C. § 4104 [of the NFIA] only applies to challenges to BFE determinations and that, by implication, the APA provides a waiver of sovereign immunity for challenging all other determinations made by FEMA when conducting an FIS [Flood Insurance Study].

Id. at *4. Simply put, the County was seeking to judicial review of the reclassification of the levee under the APA, not the NFIA. The court disagreed, stating that "[t]he County is mistaken." Id. In reaching its conclusion, the court considered general legal principles governing the waiver of sovereign immunity and the legislative history of the NFIA, noting:

> When enacting the NFIA, Congress spent more time debating the waiver of sovereign immunity than any other provision in the Act. The County argues that 42 U.S.C. § 4101(g) implies that the APA applies to all claims, other than those related to BFEs, challenging FEMA's action under the NFIA because the statute directs the District Court to review appeals of BFEs using the standard of review found in the APA. The Court may not imply a waiver of sovereign immunity that is not expressly found in the statute, instead the waiver of sovereign immunity found in the NFIA must be enforced according to its clear and unambiguous terms.

Id. Based on this analysis, the court held "that the waiver of sovereign immunity is limited to that found in the NFIA and only the BFE determinations may be challenged." Id. Therefore, the APA did not provide a basis for jurisdiction for the County's claim regarding the reclassification of the levee. See id.

Plaintiffs seek to distinguish County of Monmouth from the instant matter, arguing that there was no assertion that the federal government was responsible for the conditions

resulting in de-accreditation and that their challenge focuses on threshold authority, not issues of science or methodology. See Record Document 25 at 14-15. Plaintiffs also maintain that the legislative history of the NFIA actually supports application of the APA to this matter. See id. at 12-13. The Court is unconvinced that either of Plaintiffs' arguments sufficiently distinguish County of Monmouth from the instant matter. The County of Monmouth court carefully considered a similar legislative history argument, ultimately concluding that the APA was inapplicable and did not provide a basis for jurisdiction. See County of Monmouth, 2009 WL 3151331, *4. Moreover, as the Court will discuss more fully later in this ruling, Plaintiffs will be free to seek judicial review of FEMA's decision to de-accredit the Red River Levee System because it appears to be a part of FEMA's ultimate BFE determination, as long as their "threshold authority" challenge fits within the parameters of 44 C.F.R. § 67.6 and 42 U.S.C. § 4104(b). Accordingly, based on the foregoing analysis and following the rationale set forth in County of Monmouth, this Court finds that the waiver of sovereign immunity applicable to this case is limited to that found in the NFIA and the APA does not provide a basis for jurisdiction.

The waiver of sovereign immunity and judicial review in this case is limited to the NFIA. Plaintiffs have not invoked the NFIA's waiver of sovereign immunity in their complaint.[5] Additionally, there is no "final determination of the Director" as contemplated by 42 U.S.C. § 4104(g) because the publication and notification process and the 90-day appeal period previously discussed will not commence until after FEMA releases the

---

[5] "Plaintiffs do not, in this proceeding, challenge FEMA's flood elevation determinations for the remapping of the Red River Levee System, but hereby expressly reserve the right seek all available administrative and judicial remedies if and when those claims ripen." Record Document 1 at ¶ 78.

preliminary FIRMs on March 25, 2011. Accordingly, the Motion to Dismiss is **GRANTED** as neither the APA nor the NFIA provide a waiver of sovereign immunity applicable to the instant matter.

However, the Court makes clear that nothing in this ruling prevents Plaintiffs from reurging their complaint after a "final determination." 42 U.S.C. § 4104(g). As set forth previously, the NFIA's administrative review process is limited to challenges based on allegations that FEMA's flood elevation determinations are scientifically or technically incorrect. See 42 U.S.C. § 4104(b); 44 C.F.R. § 67.6. Plaintiffs seem to believe that the de-accreditation of the Red River Levee System was not a base flood elevation determination as contemplated by the NFIA. Yet, the Government, relying on Great Rivers Habitat Alliance v. FEMA, 615 F.3d 985 (8th Cir. 2010), maintains that "FEMA's decision to accredit or de-accredit a levee or levee system is considered a type of flood elevation determination" and could be subject to judicial review pursuant to the NFIA's waiver of sovereign immunity once there is a final agency decision. See Record Document 27 at 4. This Court has reviewed Great Rivers and agrees.

In Great Rivers, the City of St. Peters, Missouri requested a Letter of Map Revision ("LOMR") from FEMA, seeking to remove a tract of land from the Mississippi River floodplain. See Great Rivers, 615 F.3d at 987-988. The LOMR request was based upon the completion of a new levee which would protect the area from a 500-year flood. See id. at 988. Despite objections based on alleged deficiencies in the levee, FEMA ultimately issued the LOMR. See id. The court reasoned that removing the tract of land from the

floodplain was a flood elevation determination[6] as contemplated by the NFIA. In the case before this Court, it stands to reason that the de-accreditation of a levee system which will cause areas previously protected to be classified as a special flood hazard area is likewise a flood elevation determination. Therefore, if Plaintiffs ground their "threshold authority" challenge[7] within the parameters of 44 C.F.R. § 67.6 and 42 U.S.C. § 4104(b), there is nothing preventing them from seeking judicial review of the de-accreditation of the Red River Levee System after FEMA's release of the final FIRM maps.

### III. CONCLUSION.

Based on the foregoing, the Court finds that neither the APA nor the NFIA provide a waiver of sovereign immunity under the facts and circumstances of this case. The Rule 12(b)(1) Motion to Dismiss is, therefore, **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are free to reurge their complaint on there is a "final determination of the Director" as contemplated by 42 U.S.C. § 4104(g).

---

[6] A "[f]lood elevation determination means a determination . . . of the water surface elevations of the base flood." 44 C.F.R. § 59.1.

[7] Plaintiffs' "threshold authority" argument can be summarized as follows:

> The threshold issue before the Court on the merits is who is responsible for the work allegedly necessary to achieve 100-year flood protection. If the Federal Government is responsible, the de-accreditation is an unconstitutional application of the NFIP. If, however, the non-federal parties are responsible, the de-accreditation was proper and the constitutional issue is not reached.

Record Document 25 at 5.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of February, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE